UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

99 OCT 13 PH 3: 23

U.S. DISTRICT COURT
H.D. OF ALABAMA

ANNE MICHELLE LOUDERMILK,                )

    Plaintiff,                               )

vs.                                      )Civil Action No. CV-97-S-2457-NE

THE CITY OF SCOTTSBORO,                  )
ALABAMA; KEITH SMITH,
individually, and in his                 )
official capacity as Chief of
Police for the City of                   )
Scottsboro; and Scottsboro
police officer ANNE HOLLIS,              )

    Defendants.                          )

ENTERED

OCT 1 3 1998

### MEMORANDUM OPINION

Plaintiff, Anne Michelle Loudermilk, was involved in an automobile accident that left her a quadriplegic. That accident was the tragic conclusion of a high speed chase, during which Scottsboro, Alabama police officer Anne Hollis, among others, had pursued Loudermilk for a great distance. Loudermilk brings this action under 42 U.S.C. §§ 1983, 1985, and 1988, alleging violations of rights protected by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Loudermilk also claims relief under Alabama law. This action presently is before the court on defendants' motion for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment not only is proper, but "shall be rendered forthwith if



the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general

2

allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

3

## II. FACTS

On the night of Thursday, March 13, 1997, Anne Michelle Loudermilk met her sisters and friends at the "Hideaway Lounge" in Scottsboro, Alabama. The group left the Lounge about 8:00 p.m., but returned at approximately 10:30 p.m.

Responding to an anonymous telephone call notifying the Scottsboro police department that an underage female allegedly was drinking alcohol in the Lounge, Officer Anne Hollis and her partner (whom Hollis was training) were directed to investigate. Upon entering the Lounge parking lot, Officer Hollis observed Loudermilk standing beside a maroon Chevrolet Lumina. Officer Hollis recognized Loudermilk, because Hollis had arrested her on a prior occasion. Loudermilk reentered the Lounge.

The officers also entered the Lounge, to search for the juvenile, but found no one fitting the description provided by the anonymous tipster. They departed the Lounge and began patrolling the vicinity. Noticing the same maroon Chevrolet Lumina on the highway, the officers began to follow the vehicle, and subsequently witnessed the car weaving across the center line of the roadway.

The officers continued to follow, to determine whether the cause of the weaving was the heavy rain then falling. They reported the tag number to the police department's dispatcher by radio, and learned the car was registered to Walter Southard of Scottsboro. Recognizing that the driver, Anne Michelle Loudermilk,

4

was not the registered owner, the officers decided to stop the vehicle. They first turned on the patrol car's emergency lights. Loudermilk did not stop. The officers then turned on the cruiser's siren. Loudermilk still did not stop her automobile. The officers then radioed for backup. Three other Scottsboro patrol units joined Officer Hollis and her partner, but Loudermilk continued to drive. A chase ensued through a residential area into a supermarket parking lot, and back through the residential area. The chase continued onto the highway, at times reaching speeds of 100 miles per hour. Two patrol units from other jurisdictions joined the pursuit.

Two Scottsboro units eventually dropped out of the pursuit: one because the cruiser was running low on gas, and the other to return to patrol duties in Scottsboro. Officer Hollis nevertheless declared her intention to continue the pursuit of Loudermilk: "As long as we can follow her, I'm not gonna let her go. She'd kill somebody if I do." (Plaintiff's response to defendants' motion, Doc. No. 26, at 4).

Loudermilk's vehicle temporarily got stuck in the median during an attempted U-turn, but broke free and drove away as one Scottsboro officer grabbed for the door handle of the Lumina. Loudermilk then led the police onto different highways, prompting Officer Hollis to say that Loudermilk was "crazy or something." (*Id.* at 5.)

5

Loudermilk began heading east on Highway 40, a curvy, hilly, and, at the time, wet roadway. The police began to fall back, because of the dangerous road conditions. When the police were about half a mile behind her, Loudermilk attempted to go around a curve to the left and lost control of her car. She then was traveling at about 70 miles per hour. The car flipped several times, leaving Loudermilk with a broken neck, severed spinal cord, and an open head injury. Loudermilk now is a quadriplegic.

The chase extended over roughly 60 miles. Loudermilk admits she could have ended the pursuit at any time by simply stopping her vehicle. She explains her refusal to do so by saying she was "just scared ... [of] going to jail." (Plaintiff's deposition at 49.) Subsequent tests confirmed that Loudermilk's blood alcohol level exceeded the legal limit.

### III. DISCUSSION

### A.    Fifth Amendment Claim

The only portion of the Fifth Amendment that even arguably might be relevant under the facts of this case is the Due Process Clause.[1]    The Fifth Amendment's Due Process Clause, however,

---

[1] The Fifth Amendment provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

6

applies only to the federal government. *Knoetze v. United States*, 634 F.2d 207, 211 (5th Cir. Unit B, Jan. 12, 1981)[2] (citing *Perry v. Sinderman*, 408 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 570 (1972)). No defendant in this case is a department, agency, officer, or agent of the federal government. Therefore, any claim of plaintiff based upon the Fifth Amendment is due to be dismissed.

**B.    Eighth Amendment Claim**

The Eighth Amendment[3] applies to the states through the Due Process Clause of the Fourteenth Amendment.[4]  *Robinson v. California*, 379 U.S. 660, 675, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758 (1962). The Eighth Amendment's restrictions do not apply, however, "until after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40, 97 S.Ct. at 1412 n.40, 51 L.Ed.2d 711 (1977);

---

U.S. Const. Amend. V (emphasis supplied).

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[3] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

[4] The Fourteenth Amendment Due Process Clause is found in the second sentence of § 1, reading as follows:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; <u>nor shall any State deprive any person of life, liberty, or property, without due process of law</u>; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. Amend. XIV, § 1 (emphasis supplied).

7

*see also D'Aguanno v. Gallagher*, 50 F.3d 877, 879 n.2 ("The cruel and unusual punishment clause only protects people who have been convicted of a crime."). This well-established principle applies to high speed police chases, such as the one at issue. *See Galas v. McKee*, 801 F.2d 200, 205 (6th Cir. 1986) (rejecting as "completely without merit" plaintiffs' claim that "police officers' use of highspeed pursuits to apprehend traffic offenders violates the cruel and unusual punishment clause of the Eighth Amendment"). Accordingly, any claim bottomed upon the Eighth Amendment also is due to be dismissed.

C.  **Fourteenth Amendment Claim**

As defendants advise the court in their supplemental brief submitted in support of the subject motion (Doc. No. 19), Loudermilk states a Fourteenth Amendment claim for a violation of her substantive due process rights to life and personal security under 42 U.S.C. § 1983, and, the rationale recently recognized by the Supreme Court in *County of Sacramento v. Lewis*, __ U.S. __, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The issue addressed by the Supreme Court in *Lewis*, and the Court's resolution of the question, were encapsulated by Justice Souter in the first paragraph of the majority opinion as follows:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender.  We answer no, and hold that in such

8

circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

118 S.Ct. 1711-12.

### 1. Individual defendants in their official capacities

Plaintiff's claims against Scottsboro Police Chief Keith Smith and police officer Anne Hollis in their official capacities are, in essence, claims against the City of Scottsboro, Alabama. *See Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The Eleventh Circuit holds as to such claims that, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Plaintiff has sued the City of Scottsboro directly; accordingly, her redundant official capacity claims against defendants Keith Smith and Anne Hollis are due to be dismissed.

### 2. Was there a violation of substantive due process?

In response to plaintiff's § 1983 individual capacity claim against her, Officer Hollis contends she is entitled to qualified immunity. The first step in analyzing this defense, as Justice Souter observed in *Lewis*, is to determine whether the plaintiff has asserted a violation of a constitutional right at all:

9

> [A]s we have held, <u>the better approach to resolving cases</u>
> <u>in which the defense of qualified immunity is raised is</u>
> <u>to determine first whether the plaintiff has alleged a</u>
> <u>deprivation of a constitutional right at all</u>. Normally,
> it is only then that a court should ask whether the right
> allegedly implicated was clearly established at the time
> of the events in question. ...

118 S.Ct. at 1714 n.5 (emphasis supplied).

   As with the claim against Officer Hollis in her individual

capacity, for a § 1983 action to lie against Chief of Police Keith

Smith and the City of Scottsboro, Alabama for failure to train the

police officers adequately, that "policy" must have directly caused

a constitutional violation.[5]  *See Riley v. City of Montgomery*, 104

F.3d 1247, 1253 (11th Cir. 1997); *see also Rooney v. Watson*, 101

F.3d 1378, 1381-82 (11th Cir. 1996) (plaintiffs could not state

claim that county's policy of allowing patrol vehicles to drive

recklessly violated plaintiffs' constitutional rights absent

underlying constitutional deprivation pursuant to the policy).

   Thus, the court's threshold inquiry for both of these § 1983

claims, the claims against Officer Hollis in her individual

capacity and against Chief Smith and the City of Scottsboro, is

whether any of Officer Hollis'[6] acts caused a violation of

Loudermilk's constitutional rights.

---

   [5] As is true for this claim against the City of Scottsboro, it is doubly
true for the claim against Chief Smith that the threshold issue is the existence
of a constitutional violation, because he asserts, as does Officer Hollis, the
defense of qualified immunity.

   [6] Officer Hollis is the only officer whose actions in the pursuit
Loudermilk places in issue, though other City of Scottsboro police officers
participated. Given plaintiff's allegations, the court finds that analysis of
Officer Hollis' conduct is all that the circumstances and claims require.

10

### a. Standards for a substantive due process violation

The Supreme Court in *Lewis* discussed the protections of the Fourteenth Amendment's Due Process Clause, limiting such protection, with regard to executive action, to conduct that is "arbitrary, or conscience shocking." 118 S.Ct. at 1717. Elaborating on these concepts in their constitutional sense, the Court stressed that "<u>only the most egregious</u> official conduct can be said to be 'arbitrary in the constitutional sense' ...." *Id.* at 1717 (emphasis supplied) (citations omitted). Acknowledging that the "shocks the conscience" standard has no calibrated measure, the Court referred to language in its "benchmark" case, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which the Court described the police conduct as "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency."[7] *Lewis*, 118 S.Ct. at 1717.

The Court then demanded a case by case analysis "before any abuse of power is condemned as conscience-shocking." *Id.* at 1718-19. The Court noted that a "deliberate indifference" inquiry may fit under the umbrella standard of "shocks the conscience," but only in cases where the government official had time for "actual deliberation," and could make an unhurried judgment. *Id.* at 1719.

---

[7] *Rochin* involved police taking a suspected drug offender to the hospital to have his stomach pumped for the stated purpose of recovering contraband that the suspect had swallowed.

11

The Court continued, emphasizing that deliberate indifference constituting a violation under one set of facts may not be sufficient to establish a violation under different circumstances, particularly those in which the official was forced to make decisions immediately. *Id.*

The Court gave examples of when deliberate indifference would suffice as "conscience-shocking," and when more than this indifference was required. The Court identified custodial prison situations in which the government bears the duties of protection and care, such as providing food and medical care, as an instance in which deliberate indifference could establish a substantive due process violation. In these cases, the Court noted, the government had no "substantial countervailing interest" to excuse this indifference. *Id.* at 1719.

In contrast to those circumstances, and exemplifying the distinction between cases in which deliberate indifference could reach constitutional proportions and those in which more egregious conduct is required, the Court cited prison riots. *Lewis*, 118 S.Ct. at 1720. The Court then compared high speed police chases to prison riots, illustrating the concerns that raise the threshold for a due process violation:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the

12

> same moment, and their decisions have to be made in
> haste, under pressure, and frequently without the luxury
> of a second chance. ... A police officer deciding whether
> to give chase must balance on one hand the need to stop
> a suspect and show that flight from the law is no way to
> freedom, and on the other, the high-speed threat to
> everyone within stopping range, be they suspects, their
> passengers, other drivers, or bystanders.

*Id.* Ultimately, the court held that some purpose to cause harm
must be present in order to find a due process violation in a
pursuit case. *Id.*

>     b.    **Standard applicable to Officer Hollis' conduct**

The instant case falls between the examples given by the
Supreme Court in *Lewis*:   (1) a custodial prison situation, "when
actual deliberation is practical," *id.* at 1719; and (2) a prison
riot or the police pursuit at issue in *Lewis,* each requiring
"split-second judgments," *id.* at 1720 (quoting *Graham v. Connor,*
490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)).
The Supreme Court declared that deliberate indifference may shock
the conscience in the former situation, whereas an actual intent to
harm is required for conduct to rise to this constitutional
threshold in the latter. Thus, to proceed with the substantive due
process inquiry, this court must determine onto which side of the
Supreme Court's line the instant case falls:    *i.e.,* determine
whether to apply the deliberate indifference standard, or a
standard more stringent than deliberate indifference, actual intent
to harm.

13

Certain circumstances surrounding the chase in *Lewis* are strikingly similar to those in the chase involving Officer Hollis and Loudermilk. As a prelude to the high speed pursuit in *Lewis*, the police officers responded to less than grave criminal activity: they were called to break up a fight. The objects of the chase had nothing to do with the original activity that summoned the police to the scene. Noticing a potential traffic violation, driving a motorcycle at high speed, one officer activated his emergency lights to prompt the driver to stop. The driver orchestrated some fancy maneuvers to avoid the police and sped off, thus initiating the chase. The vehicles reached speeds of 100 miles per hour during the chase, and the motorcycle turned over as the driver attempted to make a left turn. *Lewis*, 118 S.Ct. at 1712.

These similarities notwithstanding, a critical difference distinguishes the two pursuits for purposes of determining which standard applies: the length of the chase, in time and distance. The chase in *Lewis* lasted 75 seconds, and extended a distance of 1.3 miles. The chase at issue in this case extended roughly 60 miles. Even if the vehicles had traveled at their peak speed of 100 miles per hour for the entire encounter (which they did not), the chase would have lasted at least 36 minutes.

Given the length of the chase at issue, the fact that other officers relented, and the remainder decided to slow their pursuit, the court finds that Officer Hollis' decision to continue the chase

14

for such a distance was an unhurried decision, allowing her time to deliberate, and rendering the holding in *Lewis* inapplicable to this case. *See generally Moreland v. Las Vegas Metropolitan Police Dep't.*, No. 97-17070, 1998 WL 652135 (9th Cir. 1998) (discussing *Lewis* and describing the determination of whether there was time to deliberate as the "critical consideration") (emphasis added).

### c. Was Officer Hollis "deliberately indifferent" to Loudermilk's due process rights

The deliberate indifference standard is less stringent than the actual harm standard, but still is very high: the indifference must shock the conscience of the court. *See Lewis*, 118 S.Ct. at 1717. Speaking of due process in a broad sense (before discussing any particular standard), the Supreme Court in *Lewis* stressed that for a due process claim to lie, the official conduct must have been "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." *Id.* at 1713. Furthermore, the Court continued, "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 1718 (citations omitted).

As indicated above, the chase lasted for some time, allowing Officer Hollis a reasonable window of reflection. Officer Hollis decided to pursue Loudermilk. Other units continued the pursuit as

15

well.   Loudermilk was driving recklessly, at best:   at times
reaching speeds of 100 miles per hour and attempting a U-turn that
left her stuck temporarily in the median, all on wet roads and
while intoxicated.  Furthermore, Loudermilk was a suspect fleeing
from police, blatantly disregarding the authority of law
enforcement.

Loudermilk was suspected only of Driving Under the Influence,
however.[8]   Officer Hollis had information on the identity and
residence of Loudermilk, and was aware of the likelihood that
Loudermilk was inebriated.    Furthermore, Officer Hollis had
speculated that "[s]he [Loudermilk] ain't gonna stop."
(Plaintiff's response to defendants' motion, Doc. No. 26, at 12)
The City of Scottsboro's policy on high speed pursuits, which
Officer Hollis had been required to read, demands that the officer
balance the interests of apprehending the suspect and the risks
involved.  (See id. at 11.)

Officer Hollis was faced with what the Supreme Court has
described as "obligations that tend to tug against each other."
Lewis, 118 S.Ct. at 1720; cf. id. (describing the decisions of
prison officials in the custodial situation, where deliberate

_____

[8] This court notes, nevertheless, that under Alabama law in effect at the
time of this pursuit, the sanction for the offense of driving under the influence
of alcohol could be as great as a Class C felony: a fine of not less than $4,100
nor more than $10,100, and by imprisonment of not less than one year and one day
nor more than 10 years. Ala. Code § 32-5A-191 (Supp. 1997). The record in this
case, however, is silent as to whether this incident was Loudermilk's first,
second, third, or fourth offense under this statute.

16

indifference can give rise to a due process violation, as "largely uncomplicated by the pulls of competing obligations"). Loudermilk was unquestionably a danger to others on the public roadways, as well as to herself. In fact, officer Hollis expressed her concerns of the danger to others: "As long as we can follow her, I'm not gonna let her go. She'd kill somebody if I do." (Plaintiff's response to defendants' motion, Doc. No. 26, at 4). The court notes that, had Officer Hollis relented, and Loudermilk in fact had subsequently injured someone else, Hollis might then be facing suit by a third party. Furthermore, Officer Hollis had an interest in preserving the integrity and authority of law enforcement. As Justice Kennedy said, concurring in *Lewis*:

> There is a real danger in announcing a rule, or suggesting a principle, that in some cases a suspect is free to ignore a lawful police command to stop. No matter how narrow its formulation, any suggestion that suspects may ignore a lawful command to stop and then sue for damages sustained in an ensuing chase might cause suspects to flee more often, increasing accidents of the kind which occurred here.

*Id.* at 1722 (Kennedy, J., concurring, with whom O'Connor, J., joined).

In light of the countervailing interests of apprehending a fleeing suspect and minimizing the risks to third parties, Officer Hollis' conduct cannot be characterized as "an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." *Lewis*, 118 S.Ct. at 1713. Although Officer Hollis had time to consider

17

whether apprehending a suspected DUI offender warranted the dangerous chase, this court finds Officer Hollis was not deliberately indifferent to the risks involved. The court is swayed particularly by two facts: (1) Officer Hollis did not exacerbate the dangerous situation by using her vehicle assertively to stop Loudermilk; and (2) more importantly, Officer Hollis decided to slow the pursuit when conditions worsened, to a point where she trailed Loudermilk by about half a mile when Loudermilk took her fateful turn.[9]

Upon consideration of the circumstances and countervailing interests, the court finds Officer Hollis' conduct does not "shock the conscience" of this court and, therefore, does not establish a substantive due process violation.

### 3.  Qualified immunity defense

As discussed above, when a defendant asserts a qualified immunity defense, this court first analyzes whether the plaintiff has alleged a constitutional violation. This court found that Loudermilk failed this threshold inquiry, and thus cannot pursue her claim further. Nevertheless, the court also is cognizant of

---

[9] In support of this application of the deliberate indifference standard, the court calls attention to another critical difference between the officers' conduct in *Lewis* as compared to Officer Hollis' conduct: the officers in *Lewis* followed the suspect "at a distance as short as 100 feet; at that speed [the officer's] car would have required 650 feet to stop." The officers were unable to stop, and hit and killed the passenger, Lewis, who fell off the motorcycle as it turned over. In contrast, Officer Hollis had slowed her pursuit to where she followed Loudermilk by half a mile, thereby avoiding the risk that materialized in the tragic, fatal accident involved in *Lewis*.

18

authority that suggests district courts begin a qualified immunity analysis, in cases presenting difficult constitutional issues, with the familiar determinations of (1) whether the defendant can demonstrate she was acting within the scope of her discretionary authority and, if so, (2) whether the plaintiff can demonstrate that the law governing this conduct was clearly established at the time of defendant's conduct at issue, and whether defendant, in fact, violated that law. *See Lewis*, 118 S.Ct. at 1723 (Breyer, J. concurring) (citing *Siegert v. Gilley*, 500 U.S. 226, 235, 111 S.Ct. 1789, 1794-95, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring)), at 1723 (Stevens, J. concurring).

The instant case presents difficult constitutional questions. Although the court could, and arguably should, end its inquiry with the determination that Loudermilk alleged no due process violation, the court, finding comfort in the diverging views, will oblige both camps on the Supreme Court and continue with the determinations listed above.

In an *en banc* opinion delivered in *Lassiter v. Alabama A & M University*, 28 F.3d 1146 (1994), the Eleventh Circuit sketched the bounds of qualified immunity in the following manner:

> Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known."
>
> . . .

19

> Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.

*Lassiter,* 28 F.3d at 1149 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982)). The qualified immunity defense to § 1983 actions extends to municipal officials. *See Hardin v. Hayes,* 957 F.2d 845, 849 (11th Cir. 1992).

Qualified immunity serves as a defense from suit, that is, from the burdens of litigation, not simply a defense from liability. *Cottrell v. Caldwell,* 85 F.3d 1480, 1487 (11th Cir. 1996). Thus, this court recognizes that "qualified immunity questions should be resolved at the earliest possible stage of litigation," *Anderson v. Creighton,* 483 U.S. 635, 646 n.6, 107 S.Ct. 3034, 3042 n.6, 97 L.Ed.2d 523 (1987), and that it is appropriate for the court to decide at this stage the threshold immunity question of whether the applicable law was clearly established at the time of the City defendants' actions. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The Eleventh Circuit has established a two-part, objective test for determining whether a governmental official may successfully assert a qualified immunity defense:

20

      1.   The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred."

      2.   Once the defendant public official satisfies his burden of moving forth with the evidence, the burden shifts to the plaintiff to show the lack of good faith on the defendant's part.  This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional laws."

*Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)).

### a.   Officer Hollis

Loudermilk concedes, and the court agrees that Officer Hollis was acting within the scope of her discretionary authority when pursuing Loudermilk.  Thus, the burden shifts to Loudermilk to demonstrate that Officer Hollis violated clearly established constitutional law.  This issue presents two questions:  first, whether the law was clearly established; and, second, whether Officer Hollis violated that law.  *Rich*, 841 F.2d at 1564.

Plaintiffs do not satisfy their burden by simply alleging defendants violated some constitutional provision and, hence, violated a constitutional right.  Rather, the Supreme Court has established "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

21

> A plaintiff must establish more than broad legal truisms;
> he or she must demonstrate that the law fixed the
> contours of the right so clearly that a reasonable
> official would have understood his acts were unlawful.
> ... Thus "pre-existing law must dictate, that is truly
> compel (not just suggest or allow or raise a question
> about), the conclusion for every like-situated,
> reasonable government agent that what defendant is doing
> violates federal law in the circumstances." *Lassiter v.
> Alabama A & M University, Bd. Of Trustees*, 28 F.3d 1146,
> 1150 (11th Cir. 1994) (en banc). Moreover officials need
> not "be creative or imaginative in drawing analogies from
> previously decided cases." *Id.* at 1150 (citations
> omitted).

*Dolihite v. Maughon*, 74 F.3d 1027, 1040-41 (11th Cir.), *cert.*
*Denied*, __ U.S. __, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996) (emphasis
supplied). In *Lassiter*, the Eleventh Circuit highlighted the
tremendous burden on plaintiff's shoulders, noting that plaintiffs
will pierce this shield of immunity only in "exceptional cases."
28 F.3d at 1149. The court also said:

> [f]or the law to be clearly established to the point that
> qualified immunity does not apply, the law must have
> earlier been developed in such a concrete and factually
> defined context to make it obvious to all reasonable
> government actors, in the defendant's place, that "what
> he is doing" violates federal law.

*Id.* (Emphasis supplied.)

Loudermilk argues that the law was clearly established with
respect to use of excessive force in non-seizure situations. She
contends that a "shock the conscience" standard was established and
that, at least, intentional conduct was a standard of culpability
that would "shock the conscience." She alleges Hollis' conduct was
an intentional violation of due process.

22

According to Loudermilk, the factors this court should consider in this evaluation include (1) the need for force, (2) the relationship between the force used and the need for force, (3) the extent of the injury inflicted, and (4) whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1501 (11th Cir. 1985) (*en banc*). Loudermilk cites *Wilson v. Northcutt*, 987 F.2d 719 (11th Cir. 1993), *Gilmere*, 774 F.2d 1495, and *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). However, none of these cases offers a "concrete, factually defined context" sufficient to make it obvious to these defendants that they were violating federal law. In fact, none involve even an automobile chase. Moreover, discussing the standard Loudermilk relies upon, the Eleventh Circuit said that it "does not establish a 'bright line' that would readily alert officers to a violation" and, therefore, qualified immunity usually applies. *Jones v. City of Dothan*, 121 F.3d 1456, 1461 (11th Cir. 1997).

Loudermilk directs this court to no bright-line that would have alerted Officer Hollis that her actions violated due process. Furthermore, the court finds Officer Hollis had no intent to harm.[10]

---

[10] This finding follows the court's finding that Officer Hollis was not deliberately indifferent. Moreover, this finding is dictated by the circumstances of the case: specifically, Officer Hollis pursuing at a distance of half a mile when conditions worsened, and her refusal to use her vehicle as a weapon, i.e., use her vehicle to physically force Loudermilk to stop. Rather, Officer Hollis' actions can be explained better by the countervailing interests

23

Officer Hollis is entitled to qualified immunity for the claims asserted against her in her individual capacity.[11]

### b. Chief Smith

Chief Smith was acting within the scope of his discretionary authority with regard to the training of police officers. Loudermilk offers no evidence suggesting Chief Smith violated some clearly established law in failing to train officers on the city's policy regarding high speed pursuits. Therefore, Chief Smith is entitled to qualified immunity, and the claim against him in his individual capacity is due to be dismissed.

### D. State Law Claim

In Count III of her complaint, Loudermilk alleges that, "defendants negligently and/or wantonly injured the plaintiff by causing her to fall [sic] striking her to lose control of her vehicle and over turn." Loudermilk further alleges that her injuries were a proximate result of "said negligence and/or wantonness."

Defendants assert as a defense the discretionary immunity provided by Alabama Code § 6-5-338(a).[12] The defense protects

_____

of apprehending a fleeing suspect, and minimizing the danger posed to third parties.

[11] Although the court is uncertain that Loudermilk asserts any claim against Chief Smith for conduct during or following Officer Hollis' pursuit of Loudermilk, the same result obtains with regard to any such claim against Chief Smith; i.e., he is immune.

[12] This provision reads as follows:

(a) Every peace officer, except constables, who is employed or

24

officers performing functions "as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice involving what is just and proper under the circumstances." *Wright v. Wynn*, 682 So. 2d 1, 2 (Ala. 1996).

This court already has found that the law was not clearly established. Alabama's discretionary function immunity closely resembles the federal defense of qualified immunity. *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998). The court finds that Officer Hollis' pursuit of Loudermilk was a discretionary function,[13] and that she is immune under state law from any injuries

---

appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such <u>shall have immunity</u> from tort liability arising out of his or her conduct <u>in performance of any discretionary function</u> within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338 (1975) (emphasis supplied).

[13] Loudermilk contends Officer Hollis acted willfully or wantonly, which would disqualify her actions as "discretionary." For the reasons the court found Officer Hollis' actions not to be deliberately indifferent, *see* Part III.C.2.a, or intentional violations of due process, *see* note 9 *supra*, the court disagrees.

25

that flowed therefrom.[14]  Accordingly, defendants' motion is due to
be granted with respect to the state law claim.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary
judgment is due to be granted.  An order consistent with this
memorandum opinion will be entered contemporaneously herewith.

DONE this the _13th_ day of October, 1998.

United States District Judge

---

[14] The court notes, further, that Loudermilk's claim likely would fail to
satisfy the causation element. *See Blair v. City of Rainbow City,* 542 So. 2d 275
(Ala. 1989).

26